HACKETT *v.* THE STATE.

Though the evidence does not make a strong case of commission of burglary as compared with larceny from the house, yet it was sufficient to warrant the jury in finding that the offence had all the essential elements of burglary, and the court did not err in refusing to grant a new trial.        *Judgment affirmed.*
June 8, 1892.

Criminal law. Burglary. Before Judge GOBER. Cobb superior court. November term, 1891.

Hackett was charged with burglary, and found guilty. He moved for a new trial; his motion was overruled, and he excepted. The motion was on the general grounds that the verdict was contrary to law, evidence, etc.; and because the confessions which were allowed to go to the jury, defendant insists, were not freely and voluntarily made, but made after Phillips, the prosecutor, had threatened to send defendant to jail if he did not get up the gun (the article alleged to have been stolen); and had told defendant, after his arrest, that if he would tell all about the gun he would turn him loose and would not prosecute him. Defendant insists no confession had been made until the threat and promise of release were made. Also, because there is no fact or circumstance in the evidence to support, sustain or corroborate the confession, and defendant could not be convicted on his statement alone.

The evidence was : Defendant was working for Phillips before he was arrested. Phillips left his house on Saturday and remained away until Monday morning.

When he left the house, not expecting to come back soon, he left the kitchen window so defendant could come in and get something to eat. Defendant knew how to get in. The window was put down and fastened, but "they" knew how to unfasten it. When he went home Monday his gun was gone. He called up Henry Thomas, another boy who was living with him, and defendant would not come about him, Phillips. That evening Phillips asked defendant where the gun was; defendant said he did not know. Phillips asked him if he came home the night before; defendant said he came down the road about midnight, did not go to bed as soon as he got there, went to the window and looked in, and did not see any light in the house. Phillips told him the gun had to be there in the morning; defendant said, "I can't get it." Phillips told him he took it off and had to bring it back. The next morning when Phillips got up defendant was gone. He had carried off some of his clothes, and Phillips asked him where he carried them. He said he carried them to his father's, and afterwards said he carried them to Bowden's. Phillips asked him what he brought his clothes back for, and he said, "They told me if I took them off and did not bring them back, it would be evidence that I was guilty." The following Sunday Phillips told one Hicks he would give Hicks $10.00 to find his gun. On Monday Hicks brought defendant to Phillips' house, and Phillips said, "Tom (defendant) you had better go and get that gun. I don't want to be fooling about court, but if you will go and get the gun I will drop it." Defendant said he could not do it, that the gun "might be in the creek, or might be setting around here somewhere." After Phillips and Hicks brought him to town and put him in jail, when they brought him in the sheriff's office he told Phillips that he stole the gun. Phillips told him Monday evening, if the gun was not there by Tuesday morning

he would settle with him, that the gun had better come back. Phillips saw Hicks coming after the defendant, and said to defendant, " You had better go and get that gun and stop this. I don't want to be fooling about the court-house with you; go and get that gun, and there will be no more of it." Defendant refused to do it, saying the gun might be in the creek, he did not know. Then Phillips and Hicks went in to dinner, and defendant took leg-bail and went off. Hicks caught him that night. When defendant was brought out for committing trial, Phillips saw him in the sheriff's office and asked him where the gun was. He said he took it and put it in an out-house and left, and the next morning the gun was gone. Phillips had both defendant and Thomas hired. Thomas has gone away but will be back in a few days. Defendant stayed at Phillips' house the next day after Phillips lost the gun, but when Phillips would go off defendant would go. He did not do any work but skirted around the woods. Thomas came to Phillips recommended as an honest boy, and defendant as a thief. Defendant remained in the neighborhood part of the time for a week after Phillips lost the gun, and stayed most of the time at Phillips' house. Some of his clothes remained at Phillips' house. Phillips never found the gun. Defendant told Hicks, after defendant was put in jail, that he went into Phillips' house and got the gun and took it out to an old house where he and Thomas slept, that he went into the house about twelve o'clock, after he came home from meeting, that he went in at the window, that he set the gun up in the corner of an old house and Thomas got it and he, defendant, had not seen it any more. It was after Phillips had made defendant the promise to turn defendant loose if he would tell where the gun was, that the above mentioned statement was made by defendant to Hicks. Defendant told the sheriff that he went in the house and got the gun and carried it into an out-house where he slept, and set it in

the corner, and the next morning when he got up it was gone and he did not know where it was; that he went in at a window. He confessed to the sheriff two or three times. Phillips was present at one of these confessions, which was when Phillips and Hicks brought defendant to the sheriff's office. At the time Phillips' house was entered none of his family were at home. The door of his bedroom was opened, and left shut Sunday morning.

J. E. MOZLEY, for plaintiff in error.

GEORGE R. BROWN, solicitor-general, by brief, *contra.*